E. S. BUCHANAN, ET AL., *vs.* ALEXANDER LORMAN, ET AL. *June Term*, 1845.

A vendee of an estate, in an unexecuted contract, is entitled to have that for which he contracted, before he can be compelled to part with the consideration he agreed to pay.

The ability of the vendor to convey should exist, when his duty by the contract arises to convey; or at the time of a decree for a conveyance, where time *is* not of the essence of the contract.

A vendee is not bound to take an estate fettered with incumbrances, by which he may be subjected to litigation to procure his title.

After a contract for the sale of land, the vendor mortgaged the same, and upon a bill filed by the mortgagee for a sale, to which the vendee was no party, a decree was passed to sell, and the trustee directed by the decree to convey to the purchaser the rights of the mortgagor and mortgagee, which was executed by a sale and deed to the purchaser, in conformity with the decree, to all which the vendor voluntarily consented. HELD:

1st. That this decree and sale operated to extinguish the vendor's title, and pass it to the purchaser.

2nd. That when the contract of sale had ripened into maturity, the vendor, by his own consent, had stripped himself of every vestige of title, legal and equitable, in the land he had sold, was in no condition to comply with his contract to convey, and had no legal capacity to enforce a reconveyance of the title to him, so that he might comply with his contract of sale.

3rd. That the vendee was not bound to take a title thus embarrassed, and embark in a lawsuit against an adversary claimant.

4th. That if the vendee had gone into equity to compel a specific execution of the contract, she must have averred a compliance on her part with the terms of the contract, or have offered to pay the purchase money.

5th. Where a bill seeks a rescission of a contract, on the ground of want of title, a payment or offer to pay is unnecessary.

6th. Where the consideration of a contract of sale wholly fails, the vendor, nor his assignees who stand in his stead, ought not to be allowed to recover the purchase money, and a judgment on a bond for it will be perpetually enjoined.

The vendor of land, assigned the vendee's bond, and judgment against him, for the purchase money to *L*, who, *before* the obligation to convey had matured, proceeded against the vendee's land *in another State*, obtained a decree against him for a sale, sold, and purchased the same. *L* had notice of the consideration of the bond and judgment which had been assigned to him, which entirely failed. When by the terms of the contract of sale, the period of conveyance had arrived, the vendor had no title to convey, nor any legal capacity to enforce a reconveyance to him; HELD, that if these defences had been brought to the notice of the court of equity, in the State where the decree for the sale of the vendee's land had been obtained, this court is bound to presume, that no decree would or could have passed against him, until the estate sold to him had been relieved from its embarrassments, and until the vendor, by so doing, could have shown himself in a condition to convey, according to his contract of sale.

The decree in the other State must be considered as conclusive, as to the merits, upon the equities existing anterior to it, and as having the efficacy of a domestic judgment or decree, and it could not there be examinable upon any ground of equity existing prior to its passage.

But upon an equity arising subsequent to such decree, which would make it inequitable in the present defendants, who obtained, to enforce it, the complainants in this bill may enjoin them from enforcing it.

When the person of the defendant is in *Maryland*, though the land in controversy is in *Virginia*, and the object is to vacate a decree of a court of the latter State, though this cannot be done, yet the defendant seeking to enforce such decree, may be enjoined from accepting a conveyance of lands purchased by him under it, or if he has obtained title inequitably, may be decreed to reconvey the same.

Where a vendee, upon a contract for the purchase of land, has been let into possession, and it is afterwards rescinded by decree, he is responsible for any deterioration of the property arising from his improvidence, or culpable negligence, but not otherwise; and for all the time it was occupied by him or his agents, he should account for rents and profits.

There is generally a great disproportion between rents and profits, and interest on the purchase money, so that there is no propriety in awarding interest, where the sale is rescinded.

When a contract is rescinded, a court of equity could never treat the vendor as entitled to the purchase money, nor consider the vendee as the owner of the land.

Where the court determined that a contract ought to be rescinded, in a case where there was no legal evidence to show the possession of the vendee or its duration, or whether the deterioration of the property proceeded from casualty or negligence, nor the value of the rents and profits, they neither reversed nor affirmed the decree of the chancellor, but remanded the cause under the act of 1832, ch. 302, that evidence might be taken on those subjects.

APPEAL from the Court of Chancery.

This cause was before the court at December term 1840, 11 *Gill & John.*, 342; after it was remanded to the court of chancery the complainants filed their amended and supplemental bill, in which it was alleged, by *E. S.*, *Samuel S.*, *William B.*, and *Robert S. Buchanan*, children and heirs at law of *James A. Buchanan*, and sister and brothers and heirs at law of *Eliza S. Buchanan*, complainants, that heretofore *Eliza S. B.* purchased of a certain *George Torrance*, one undivided fifth part of the *Warren Factory*, situate in this State, and its lands, mills, &c., for the sum of $60,000; and in order to secure the payment of said sum, executed and delivered to said *Torrance*, a bond dated 16th April 1829, with *J. A. B.*, *W. B.*, *E. S. B.* and *R. S. B.*, as her sureties; and the said *Torrance* at the said time, gave to the said *Eliza S. Buchanan* his bond for the conveyance of the said property, which your complainants are ready to produce, whenever this court shall require the same. That on the 1st August 1831, the said *George Torrance*, for the use of a certain *Wm. Fulford*, *Wm. Lorman* and *Alexander Lorman*, instituted an action of debt in *Baltimore* county court against *J. A. B.*, *W. B. B.*, *E. S. B.*, and *R. S. B.*, as surviving obligors of *Eliza S. Buchanan*, and thereon, on the 12th December 1832, recovered a judgment of the said court for the sum of, &c. That the said *Torrance* assigned the said bond of *E. S. B.*, and her sureties to the said *W. F.*, *W. L.*, and *A. L.*, and that they, and each and every of such assignees, well knew before, and at the time of such assignment, for what consideration, and upon what contract the said bond was given, and that it was, in fact, given for the purchase money of the said *Warren Factory*, its lands and appurtenances. That after the contract aforesaid, between the said *Eliza S. Buchanan* and the said *George Torrance*. in relation to the said *Warren Factory*, had been entered into, and while the legal title thereto still remained in him, the said *George Torrance*, to wit, on the 13th August 1830, he, the said *G. T.*, for the purpose of securing a note, endorsed, for his use, by the said *W. F.*, and discounted for the use of him, the said *G. T.*, duly executed and delivered

to him, the said *W.*, a mortgage of the said one undivided fifth part of the *Warren Factory*, to secure the payment of the said note, amounting to the sum of $11,000, and which said mortgage was made subject to the operation and effect of the bond, executed as aforesaid to the said *Eliza S. Buchanan*, all which will, &c. That afterwards, to wit, on the 7th May 1834, the said *William* and *Alexander Lorman* having taken the place of the said *William Fulford*, as endorser upon the said promissory note of *George Torrance* for $11,000, the said *William Fulford* and *George Torrance* assigned to the said *William* and *Alexander Lorman*, said mortgage of the 13th August 1830, from said *George Torrance* to *William Fulford*, and also a certain other mortgage of the 21st August 1829, herewith filed as a part of this bill for property acquired by said *Torrance*, whether from his father or mother, or both, the object of which mortgages was to secure the said debt of $11,000. That on the 30th November 1831, the said *Torrance*, for the purpose of securing another sum of $7,500, by him borrowed from the said *William* and *Alexander Lorman*, executed another mortgage to them of his undivided fifth in the said *Warren Factory* and appurtenances, also subject to his bond of conveyance, to the said *Eliza S. Buchanan*, so that in effect and fact, he, the said *George Torrance*, after his contract with the said *Eliza S. Buchanan*, and while he held the legal title to the property, the subject of that contract mortgaged and conveyed the said legal title to the said *Alexander* and *William Lorman*, to secure them the sum of $18,500, obtained by the said *George Torrance*, on his own account, or for his own uses, and in no way connected with the said factory, the consideration of the bond of the said *Eliza S. Buchanan*, or the complainants in this cause. And these complainants further allege, that after the said contract between *E. S. B.* and *G. T.*, the said premises were destroyed by fire; that the same were insured, and that the said *W.* and *A. L.*, or the said *T.*, received the amount of the insurance, or some part thereof, and they pray an answer and discovery, of the sum so received, which these defendants insist was, and is in equity in part payment of the said bond from *Eliza S. Buchanan* to said *Tor-*

*rance*, and must be so considered and taken, or at any rate, went to pay the debt due from the said *Torrance* to the said *William* and *Alexander Lorman*. That afterwards, to wit, on the 12th May 1835, the said *W. L., A. L.* and *W. F.* filed their bill on the equity side of *Baltimore* county court, a court of full, complete and competent jurisdiction in the premises, against the said *G. T.* alone; the object of which was to sell the property, estate and effects which had theretofore been mortgaged by the said *G. T.* to the said *Lormans* and *Fulford,* as hereinbefore mentioned, for the purpose of paying the debt due to the complainants in said last mentioned bill; that to this bill the said *G. T.* immediately appeared, and voluntarily came into the said *Baltimore* county court, and confessed the said bill, and consented to a decree for the sale of the property therein referred to. That thereupon, a certain *Philip T. Dawson* and *Frederick Dawson,* and the *Warren Manufacturing Company,* claiming to be the assignees of a certain *John T. Barr,* a judgment creditor of the said *G. T.,* petitioned *Baltimore* county court to be made parties defendant to the said bill of the 12th May 1835, upon the ground, that they had a lien in virtue of the said judgment, on the property mortgaged by the said *T.* to the complainants in that cause, and that the said bill had been filed without making the petitioners parties, for the purpose of defeating such lien; and thereupon the said *Philip* and *Frederick Dawson,* and the said *Warren M. Co.,* were by order of court, on the 13th May 1835, admitted *nisi* defendants to said bill; that thereupon the said *Dawson* and the *Warren M. Co.* answered the said bill, also agreed to a sale, and that the proceeds thereof should be brought into court to abide the decision thereof. That on the 10th October 1835, a decree was passed in said cause by *Baltimore* county court, that the property in the proceedings mentioned be sold, and that upon payment of the purchase money, the trustee appointed to make such sale should convey to the purchaser or purchasers thereof, his, her, or their heirs, the property and estate to him, her, or them sold, free, clear, and discharged from all claims of the parties thereto, complainants and defendants, and those claiming by, from, or under them, or either of them; and the said

trustee was thereby ordered to bring into the said court the money arising from said sale to be distributed under the direction of *Baltimore* county court. That afterwards, to wit, on the 16th January 1836, the trustee, under the decree of the 10th October 1835, proceeded to make sale of the property, ordered to be sold thereby, and, in fact, sold the said one-fifth part of the *Warren Factory* and its appurtenances, and the title and interest of the said *G. T.* therein, for the sum of $7000, to the *Warren Manufacturing Company*, by the said *Frederick Dawson*, and sold certain other property to the amount of $10,230, to the said *William Lorman* and *Alexander Lorman*, by the name of *William Lorman & Son.* That the gross sum of such sales amounted to $17,230, and on the 26th February 1836, said sales were finally ratified and confirmed.

And now your complainants show, that instead of the proceeds of said sales being distributed in due course of law and equity, by *Baltimore* county court, according to the reservation of the decree of the 10th October 1835, and the proceeds of the property sold by *G. T.* to *E. S. B.*, applied as they should have been, to the extinguishment of the debt due by her to *T.*, on her bond of April 1839, and which he had assigned to the said *Lorman* and *Fulford*, who were merely his sureties and creditors, with notice of the equities of the said *E. S. B.*, and to that extent, to the relief of the said sureties of the said *E. S. B.*, on her bond to *T.*, and instead of applying the proceeds of the other part of said property, in payment of the debt due by said *T.* to *F.* and *L.*, and in relation to which, these complainants charge, that the said *L.* and *F.* had a prior right and lien over and before the said *Dawson* and the said *Warren M. Co.*, as assignees of *John T. Barr*, and that it ought in equity, to have been applied to the debt of the said *Torrance*, due *Lorman* and *Fulford*, and in fact, the said *William* and *Alexander Lorman*, and *Frederick* and *Philip T. Dawson*, instead of permitting the sales of the said *Torrance's* property, to be distributed according to the due course of equity intercepted the same; and on the 26th February 1836, agreed that the sum of $10,130, and no more, should be applied to the payment of the sum then due on the said mortgages, exhibited

with the bill in *Baltimore* county court, and that for the remaining balance due on said mortgage, the said *William* and *Alexander Lorman* should look to certain property of *James A. Buchanan*, in or near to the town of *Wheeling*, in the State of *Virginia*, which had been attached under a judgment assigned to said *W.* and *A. Lorman*; by *G. T.*, as a further security for said mortgage debt; and the said *P. T.* and *F. D.* agreed, that they would never, in any manner, interfere with the said property of *J. A. Buchanan*, near *Wheeling*; and it was also further agreed, that the balance of the said proceeds of sale, in the hands of said trustee, should be applied under the direction of that court, without any other or further claim whatever, being made thereto, or to any part thereof, by them, or either of them, and that the said *P.* and *F. Dawson* should hold the said balance free, clear and discharged from all and every claim thereto, by the said *William* and *Alexander Lorman*, or either of them; that upon the final audit of the said proceeds, by *Baltimore* county court, the sum of $10,130 was awarded to the said *William* and *Alexander Lorman*, and the sum of $6432.15, to the *Warren Manufacturing Company;* and that it also appears by the auditor's report in said cause, that the equity of redemption of the said *George Torrance*, remaining after the execution of his mortgages to said *W.* and *A Lorman*, had been sold to to the said *Warren M. Co.*, and said Company entitled to the balance of the proceeds after payment of said *Lorman's* debt, and that on the 26th March 1836, the said audit and distribution of the proceeds was finally ratified by *Baltimore* county court; that afterwards, the said *T.* filed his petition in *Baltimore* county court, objecting to the allowance of the said sum of $6422.15 to the *Warren M. Co.*, and thereupon, *W.* and *A. L.*, on the 9th May 1836, executed a release under seal, acknowledging to have received from *John Glenn*, the trustee, who sold the premises under the decree of October 1835, the sum of $10,130, with the interest, being in full for the amount allowed them, in the case of *L.* and *T.* and others, per auditor's report of 11th March 1836, and in consideration thereof, released the said *Glenn*, trustee, of, and from all and every action, suit, claim or demand, which could or might

8    v.3

properly be brought, exhibited or prosecuted against the said trustee, for or on account of the said sum of money, or the payment thereof, thereby declaring themselves fully satisfied and contented, and paid the said amount as above specified.

And your complainants are now advised, and therefore charge, that the said *W.* and *A. L.* having become the mortgagees of the property sold by the said *G. T.* to *E. S. B.* and the assignees of the bond of the said *E. S. B.*, and her sureties, for the payment of the purchase money of said property so sold, and having obtained judgment against the sureties of the said *Eliza S. B.*, and being well aware that the said *James A. Buchanan*, and the complainants in this cause, were the sureties of the said *Eliza S. B.*, and therefore interested in the application of the proceeds of the one undivided fifth part of the *Warren Factory*, to the payment of the said *T*'s debt to *W.* and *A. L.*, and *F.*, to the end that the right and title of the said *G. T.*, should remain unfettered and disincumbered until the year 1839, when the principal sum of $60,000, the purchase money of the said one-fifth of *Warren* factory would be due and payable, should have been content, and it was their duty to have suffered the proceeds of the property mortgaged to them by the said *T.*, to have been distributed according to the course of equity, and that if it had been so dealt with, the debt, principal and interest, not more than $11,000, with interest from 12th May 1835, according to the bill of the said *L's*, due to them, mentioned in the said mortgages of *G. T.*, would have been fully paid, and the bond of the said *Eliza S. B.*, and her sureties, and the judgment thereon must and would have reverted to the said *G. T.*, and the sole question then between the said *E. S. B.*, and her heirs and sureties, would have been, whether, as the said *Torrance* had consented to a sale of said property upon a bill to which neither she nor these complainants were parties, he, the said *T.*, after such sale not being able to give title, and not having title, could enforce the purchase money for said one-fifth of *Warren Factory*, which these complainants are advised, and charged, that he, the said *T.*, could not; yet now so it is, that the said *W.* and *A. L.*, disregarding the rights of the said *Eliza S. B.*,

and her sureties not content to enforce their rights in a due course of law, wrongfully and injuriously entered into a special agreement with a certain *Philip* and *Frederick Dawson*, and the *Warren* factory, by which they, the *W.* and *A. L.*, relinquished voluntarily the sum of $6422.15 of the proceeds of the property, mortgaged to them as aforesaid, without the consent of the said *T.*, with the intent to make *J. A. B.*, (a mere surety of the said *E. S. B.*,) pay the same, $6422.15, while at the same time, the said *W.* and *A. L.* either knew, or ought to have known, that by the sale of the said one-fifth of the *Warren Factory*, under the decree of the 10th October 1835, the title, and certainly the possession thereof, was with another party than themselves, while they still claim to enforce said bond of April 1829, and were diligently making a case of great and serious embarrassment to the title purchased by *E. S. B.*, to the injury of your complainants, and forcing them into litigation with the purchaser, under said last mentioned decree of October 1835, in order, if at all, to procure the title purchased by her.

These complainants therefore insist, that under such circumstances that the said *W.* and *A. L.*, both in their own right, and as assignees of *W. F.*, are fully paid and satisfied, and have no color or claim in equity to proceed against the property of the said *J. A. B.*, or the securities or heirs of the said *Eliza S. B;* and they further charge, that the said *W.* and *A. L.*, have no claim, or color of claim against the said *Eliza S. B.*, or her heirs or sureties, except as assignees or mortgagees of *G. T.* aforesaid; that the said trustee, who made the sale of the 16th January 1836, did, on the 26th day of March 1836, execute a deed for said one-fifth of *Warren Factory* to the purchaser; that neither the said *W.* and *A. L.*, nor the said *G. T.*, can give title to the said *E. S. B*, her heirs or sureties, to the said one-fifth of *W. Factory*, and appurtenances; that the same has been sold, and possession thereof delivered to the purchaser thereof, under the sale of the 16th January 1836, and that the consideration of the said bond of April 1829, has in fact wholly failed, and chiefly by the fact that the said *T.*, with the knowledge of the said assignees of the said *E. S. B's*

bond, has voluntarily placed it out of his power, to make a title clear and undisputable to said one-fifth of *Warren Factory*.

And these complainants further show, that after the rendition of the judgment in *Baltimore* county court, at law, and before the filing of the bill on the equity side of *Baltimore* county court, in May 1835, to wit, in the month of June 1833, the said *G. T., W. F., W. L.* and *A. L.*, filed their proceedings in chancery, in the circuit superior court of law and chancery, for the county of *Ohio*, in the State of *Virginia*, for the purpose of enforcing the payment of the judgment obtained by them in *Baltimore* county court, at law, upon the bond of *E. S. B.* against her sureties, the said *J. A. B., W. B. B.,* and *Esther S. B.*, and *R. S. B.*, who were not inhabitants of *Virginia*, and against *Morgan Nelson* and *Lewis Bonnett*, the debtors of *J. A. B.*, and it was so proceeded in, that in the month of November 1835, that it appearing to the court in *Virginia*, that the said *J. A. B.* hath real effects in said State, and that his personal effects therein amount to $333.33, the court adjudged, that the complainant's bills against him should be taken for confessed, and then rendered a decree against him for the sums due from him, in conformity to the judgment of *Baltimore* county court, and that *Lewis Bonnett* pay to the the complainants the sum of $333.33, with interest from 8th July 1833, until paid, and that unless the said *J. A. B.*, on or before the 10th December 1835, do pay the complainants the sum of $24,744, &c.; that the sheriff of *Ohio* county do sell, &c., a tract of 443 acres of land, in the amended bill mentioned as the property of *J. A. B.*, upon the terms prescribed in said decree, and the said cause was also further retained for proceedings against an undivided interest of *J. A. B.*, in certain other real property in the counties of *Ohio*, and *Marshall*, in the State of *Virginia*, and against the said *J. A. B.*, as to the other defendants, the said bill was dismissed; and that afterwards, on the 30th July 1836, the land in the said decree condemned, was under the said decree, put up and sold for fifteen dollars per acre to the said *William* and *Alexander Lorman*, the said *W.* and *A. L.*, having previously filed a bond, as required by the said decree, all which will more fully and at large appear upon a reference, &c.

And so your complainants charge, that after the agreement of the said *W.* and *A. L.*, of the 26th February 1836, with the said *D.* and *Warren M. Co.*, by which they, the said *Lormans*, were in equity fully paid, to wit, on the 30th July 1836, they proceeded to make sale wrongfully of the property of the said *J. A. B.*, and that the said *G. T.*, long after he had parted with his title to the said undivided fifth of *Warren Factory*, and had lost all legal and equitable control over the same, and being now, and for a long time past, utterly insolvent and wholly unable to comply with his bond of conveyance, or respond in damages for the breach thereof, is wrongfully proceeding jointly with the said *L.* and *F.*, in *Virginia*, to enforce the bond and judgment of *Baltimore* county court as aforesaid; these complainants contending, that after the consent to the said sale, by the said *Torrance*, and after the said agreement of 26th February 1836, neither he, nor the said *Lormans*, had any power or right further to proceed in the recovery of the said bond of *E. S. B.*, and her sureties; that the said *Eliza S. B.* died sole and intestate, and left her father, *J. A. B.*, and her brothers and sisters, *W. B. B.*, *Esther S. B.*, *R. B.* and *S. S. B.*, her heirs at law; that *J. A, B.* is also dead, and left the said children, his heirs at law; that the same are all citizens of *Maryland*, but the said *J. A. B.* devised his whole estate to his son, *S. S. B.* aforesaid; that *W. F.* is dead, and a certain *H. F.* was appointed his executor, and took upon himself the burthen of that trust; that *G. T.*, *W.* and *A. L.*, are all inhabitants of *Maryland;* that *Lewis Bonnett* lives in *Virginia*, and is not a resident of this State. And finally, these complainants are so advised, and therefore insist and charge, that the said *G. T.*, for his own account, and for considerations moving unto himself, without the consent of the said *Eliza S. B.*, her securities or co-obligors, in her aforesaid bond, or her heirs at law, did divest himself of all legal and equitable title to the said one-fifth part of *Warren Factory*, its lands, &c., and did and has placed himself in a situation, and the said *W. F.*, *A. L.* and *W. L.*, have also placed themselves in a situation, whereby neither they, nor either of them can convey title to the said part of *Warren Factory*, sold as aforesaid, or its

appurtenances, or any part thereof, to the said *Eliza S. B.*, her co-obligors or heirs at law; and so that the consideration for which the said bond of April 1829, was given, and the judgment thereon was confessed has wholly and entirely failed. That no administration has been taken out upon the personal estate of *Eliza S. B.*; that in fact she left no effects; that *J. A. B.*, in the year 1834, became and was a petitioner for relief under the insolvent laws of *Maryland*, and that the said *S. S. B.* was duly appointed his permanent trustee, and gave bond as such, with security, for the faithful performance of that trust, which was duly and regularly approved. That this application for relief of *J. A. B.* was had and made before the said defendants, or any of them, had obtained any process against, or any lien, judicial or otherwise, to affect the lands, or the title to lands or real estate of the said *J. A. B.*, in *Virginia*, and that the time, course, and manner of the said proceedings in *Virginia*, by and on behalf of the defendants in this cause, will fully and particularly appear by the record above referred to. That the said proceedings in *Virginia* are in effect, an attempt to prevent the just and legal distribution of the property of an insolvent debtor, an inhabitant and citizen of *Maryland*, by other citizens of *Maryland*, bound to respect the laws of this State, and liable to be restrained for any violation thereof, and are, in law, against the policy of our insolvent laws. Prayer, that the sale of the said one-fifth part of the *Warren Factory*, its lands, &c., made by the said *George Torrance* to *Eliza S. Buchanan*, may be vacated and annulled; that the said bond of the said *Eliza S. Buchanan*, and her sureties aforesaid, of April 1829, may be vacated; that the plaintiffs at law may be perpetually enjoined from enforcing the judgment of *Baltimore* county court upon the said bond, and that the same may be entered satisfied or stayed, and that the said *G. T.*, *A. L.* and *W. L.*, and *W. F.*, may also be perpetually enjoined from further proceeding upon their decree in the circuit superior court of law and chancery for the county of *Ohio*, in the State of *Virginia;* that the sale reported in said cause of *James A. Buchanan's* land may be vacated, and the said *W.* and *A. L.* be enjoined from receiving a conveyance for said land, or in any manner

alienating or disposing of the same, or that the said *W.* and *A.* may be decreed to hold the same in trust for the heirs of the said *J. A. B.*, or his assigns; and they pray, further, for such other and general relief as the nature of their allegations, proof and equitable rights shall and may sanction; and for process, &c.

The answer of *Alexander Lorman* admitted that *Eliza S. Buchanan* purchased of a certain *G. T.* one undivided fifth part of the *Warren Factory*, &c., for the sum of $60,000, as stated in said bill; and that in order to secure the payment of the said sum, she executed the bond, of which a copy is exhibited, with the original, bill in this cause. He further admits, that on the 1st August 1831, the said *G. T.*, for the use of *W. F.*, *W. L.*, and this defendant, instituted an action of debt in *Baltimore* county court against *James A. Buchanan*, &c., surviving obligors of *Eliza S. Buchanan;* and that on the 12th December 1832, the said *G. T.* obtained, by confession, a judgment of the said court for, &c. That the said *G. T.* assigned the said bond of the said *E. S. B.* and her sureties to the said *W. F.*, *W. L.*, and this defendant, and that the said assignees, and each of them knew, before and at the time of such assignment, that the said bond of the said *E. S. B.*, and her sureties, was given to secure the payment of the purchase money contracted by her to be paid for the said one undivided fifth part of the said *Warren Factory*, its lands and appurtenances. And this defendant denies that the bond of conveyance, given by said *G. T.*, was given to the said *E. S. B.* on the day of the date of her bond for the payment of the purchase money hereinbefore referred to, but avers, that the said bond of conveyance from the said *G. T.* to the said *E. S. B.*, bears date the 20th April 1829, and was delivered on that day. And this defendant alleges, that the said *E. S. B.*, and her sureties, made default in the payment of the sum of, &c.; and that on the 21st August 1829, the said *G. T.* executed to *W. F.*, in the State of *Maryland*, a deed of mortgage, filed with the bill in this cause, and that thereafter, the said *E. S. B.*, and her sureties, further made default in the payment of the sum of, &c.; so that the said *G. T.*, on the 13th August 1830, with a view

to the further security of the said *W. F.*, executed the second mortgage, exhibited with the bill in this cause, which said mortgage, as this defendant admits, was made subject to the operation and effect of the bond of conveyance, executed as hereinbefore stated, on the 20th April 1829, by the said *G. T.* to the said *E. S. B.*, and which mortgage was intended to operate; and did operate, merely as a transfer of the debt then due upon the bond aforesaid, of the said *E. S. B.* and her sureties. And this defendant further answering, admits, that on the 30th November 1830; when the amount of the instalments, required by the bond of his said *E. S. B.* to be paid, and which had fallen due since the mortgage to *W. F*, as aforesaid, was $4500, the said *G. T.* with the knowledge and assent of the said *W. F.*, executed a mortgage to *W. L.* and this defendant, of the said one undivided fifth part of the said *Warren Factory*; and which mortgage was intended to operate, and did operate, merely as a transfer of the debt which had become due on the said bond of the said *E. S. B.* and her sureties, since the 13th August, in the year 1830, the date of the mortgage so as aforesaid made to *W. F.* And this defendant further answering, admits, that on the 7th May 1834, *W. F.* and *G. T.* executed to *W. L.* and this defendant, the indenture of assignment, filed with the bill in this cause; and he admits that the said mortgage of the 30th November 1831, and the said indenture of assignment of the 7th May 1834, were made and accepted, subject to all rights which the said *E. S. B.* had acquired under the bond of conveyance hereinbefore referred to. That the said *G. T.* received the sum of $8949.20, on account of a policy of insurance effected by him on his insurable interest in the said one undivided fifth part of the said *Warren Factory*, and that the same was duly paid over by the said *G. T.* to the said *W. L.* and this defendant, on account of their claim against him; and this defendant denies that the said policy of insurance was intended to cover, and did cover, any interest of the said *E. S. B.* in the insured premises; and he denies that the sum so received on account of the policy aforesaid, or any part thereof, was or is applicable to the payment of the said bond of the said *E. S.*

*B.* and her sureties. That on the 12th May 1835, the said *W. L.* and this defendant, as complainants, filed their bill in *Baltimore* county court, sitting as a court of equity, against the said *G. T.*, for the purpose of compelling payment of the balance of $11,000, then due to the said *W. L.* and this defendant, by the said *G. T.*, after duly crediting him with the sum received by them of him, as aforesaid, on account of the policy of insurance hereinbefore referred to. That in the course of the proceedings on said bill, a certain *Philip T. Dawson* and *Frederick Dawson*, and the *Warren Manufacturing Company*, by their petition and the order of *Baltimore* county court, passed thereupon, were permitted to appear as defendants to the said bill, and filed their answer as defendants in the said cause, and thereafter filed their consent to the decree, which was rendered by *Baltimore* county court on the 10th October 1835, as will more fully appear by the said decree, being part of complainant's bill in this cause.

And this defendant further admits, that the proceeds of the sales, made in pursuance of the said decree, amounted to the sum of $17,230, of which the sum of $10,130 was, by agreement of the parties, dated the 26th February 1836, audited to *W. Lorman* and this defendant, and the sum of $6422.15 was awarded to the *Warren Manufacturing Company;* and he admits, that for the balance remaining due on the said mortgages, after the credit of the said sum of, &c., the said *W. L.* and this defendant, by the agreement aforesaid, were to look to certain property of *James A. Buchanan*, at or near *Wheeling*, in the State of *Virginia*, for which property as their security, exclusive of any claim of the said *Philip T. Dawson* and *Frederick Dawson*, they had agreed to pay, and have paid the said *Philip T. Dawson* and *Frederick Dawson*, the sum of $1000; that the said *W. L.* and this defendant, received from *John Glenn*, the trustee appointed in and by said decree, the aforesaid sum, and have duly executed to him their release therefor, as charged in said bill; that on the 26th February 1836, the date of the agreement aforesaid, made in the cause in *Baltimore* county court, as a court of equity hereinbefore mentioned, several instalments of the bond of the said *E. S.*

9    v.3

*B.*, and her sureties as aforesaid, had become due and payable since the 30th November 1831, amounting altogether to the sum of $15,300, which this defendant insists, that the said *W. L.*, this defendant, and the said *G. T.*, were entitled to receive in like manner as the instalments due before that period, the said *W. L.* and this defendant, to the extent of their interest in the said instalments, as security for the debt due to them by the said *G. T.*, and the said *G. T.* the balance; that after the rendition of the judgment in *Baltimore* county court hereinbefore mentioned, and before the filing of the bill on the equity side of *Baltimore* county court as aforesaid, to wit, in the month of June, in the year 1833, the said *G. T.*, *W. F.*, *W. L.* and this defendant, filed their bill in chancery in the circuit superior court of law and chancery for the county of *Ohio*, in the State of *Virginia*, as set forth in the complainant's bill, and he admits exhibit, &c., to be a copy of the record of the proceedings of the said circuit superior court upon the bill so filed; and this defendant avers and insists, that the orders and decrees of the said circuit superior court of law and chancery, set forth in said record, still remain in full force and effect, not in any wise reversed, annulled, set aside or rendered void, and this defendant accordingly claims the benefit thereof; that the said *E. S. B.* died sole and intestate, and left her father, *J. A. B.*, her brothers, *W. B. B.*, &c., surviving her; and he further admits, that *J. A. B.* has departed this life, and that he left the following children, his heirs at law, *W. B. B.*, &c., but this defendant does not know whether all of his said children be citizens of this State or not, nor does this defendant know whether the said *J. A. B.* devised all his estate to the said *S. S. B.*, as stated in said bill; that the said *W. F.* is dead, and that a certain *H. F.* was appointed his executor, and took upon himself the burden of that trust, but he states that the said *H. F.* has since departed this life, and that the father of this defendant, *W. L.*, is also dead; that no administration has been taken out on the personal estate of *E. S. B.*, but this defendant does not know whether she left no effects, as stated in said bill; and he further admits, that the said *J. A. B.*, on the 11th December 1834, made application for the benefit of the insolvent laws of

*Maryland,* and that the said *S. S. B.* was duly appointed his permanent trustee, and gave bond as such. And this defendant denies, that the said proceedings in *Virginia,* were intended to prevent the just and legal distribution of the property of the said *J. A. B.,* as charged in said bill; but to the contrary thereof, he insists, were duly and rightfully instituted and prosecuted, and that he is entitled to the full benefit thereof, without this, &c.

The answer of *George Torrance* adopted that of his co-defendant, *Alexander Lorman.*

It was admitted, that neither *William Fulford,* nor *Henry Fulford,* nor their heirs, have any interest in the cause, their interest having been transferred, and their liability for *Torrance* having been assumed by *A.* and *W. Lorman;* that *Alexander Lorman* is the only child, surviving partner, and heir at law of *William Lorman,* deceased, and succeeds to whatever right or interest the said *William Lorman* had, in the subject matter or controversy in this cause, and is the administrator of the said *William Lorman.*

The various exhibits and documents, (except the bond for the purchase money,) referred to in the bill, were filed with it.

On the 28th November 1843, the Chancellor, (BLAND,) dismissed the bill, being of opinion that under the facts and circumstances of the case, the complainants were not entitled to relief.

The complainants appealed.

The cause was argued before ARCHER, C. J., SPENCE and MARTIN, J.

By GLENN for the appellant, who contended, that the decree below was erroneous:

1st. Because the case was decided the other way, upon the former appeal.

2nd. Because the vendor, *Torrance,* by his own acts, put it out of his power to give *E. S. Buchanan,* his vendee, a title to the property, and caused a total failure of consideration.

3rd. Because the agreement of *Lorman* and others, the appellees, in relation to the rights, if they had any, against *Eliza S. Buchanan,* deprives them of the right to pursue the other parties.

He maintained, that the *Dawsons* did not purchase to hold under *Miss Buchanan,* nor with knowledge of her title, but adversely to her; and hence there was a total failure of consideration as to *Miss B.* If the purchaser is evicted before title made, he may recover back the purchase money, 2 *Sug.*, 279, 420, though once in possession. *Cripps vs. Reade,* 6 *Term. Rep.*, 606. *Johnson vs. Johnson,* 3 *Boss & Pull,* 162.

The vendor cannot demand specific performance, unless he can convey, or unless he can do all that it is incumbent on him to do. *Garnett vs. Macon,* 6 *Call's Rep.* 368. Here the purchasers were entitled to a deed in 1839, and then only could they require title, yet, in 1839 it was gone, past recovery, There could be *no quid pro quo* for mean, while the vendor had designedly disposed of it to another. We are entitled to a clear title, or to rescind the contract. *Frisbee vs. Hoffnagle,* 11 *John.,* 50. *McKay vs. Carrington,* 1 *McLean,* 50. *Duplantier vs. Pigman,* 1 *Con. Louis'a,* 116. 3 *Martin* 236. Danger of eviction is enough for equitable interference. There was an express contract, and the complainants are sureties. The property was diverted to their detriment.

All the sureties are injured. By the contract of the defendants the sales were paid to *Dawson,* in extinguishment of liens due from *Torrance.* A new bargain is struck in opposition to the securities, and it took from them property on which they might properly rely.

David Stewart, for the appellees, in support of the decree insisted:

1. That the purchaser, under the decree of *Baltimore* county court, if in truth he acquired any interest in the premises attempted to be sold, purchased the same with notice of the agreement between *Torrance* and *Eliza S. Buchanan,* and took subject to the equities of the latter arising out of that agreement. The heirs of the latter may, therefore, enforce a

specific execution of the agreement as against the purchaser under the decree, on paying the balance of the purchase money due on the agreement to the persons entitled thereto.

2. That the mortgages from *Torrance* to *Fulford* and *Lorman*, under which the sale was professedly made, assigned merely parcels of the purchase money due from *Eliza S. Buchanan* to *Torrance*, on the agreement between them, as indemnities to the said assignees against liabilities they had assumed for *Torrance*, with the benefit of the vendor's lien on the property sold by *Torrance* to *Eliza S. Buchanan*.

3. That the sale made under the decree of *Baltimore* county court could, therefore, operate only as an assignment of so much of the purchase money due from *Eliza S. Buchanan* to *Torrance*, as was equivalent in value to the proceeds of sale made under the decree, or at the extent to the balance due on the mortgages, for satisfaction of which the sale was made. The right to demand payment of the residue of the original purchase money yet exists in *Torrance*, or *Lorman* as his assignee of the judgment stated in the proceedings.

4. That if the agreement is to be rescinded at all, it ought to be upon the equitable conditions of payment by the complainants, as representatives of the purchaser, of interest on the purchase money, during the time the possession of the premises remained in the hands of the original purchaser, and an equivalent in value for deterioration of the property during the continuance of such possession.

5. That the decree in *Virginia* was an appropriation of the property decreed to be sold in payment of this debt, and the vendor is entitled to the benefit of this decree, since the value of the property so appropriated, together with the proceeds of sales subsequently made, are not equal to the balance of purchase money yet due.

*E. S. B* bargained with her partner and co-shareholder, *Torrance*, and so became sole proprietor of the *Warren Factory*. Upon that purchase she was in default $19,344, at the time of the judgment on the bond, which was payable by instalments. The property was mortgaged subject to her contract, and it was assigned to *Lorman*, liable to the same incumbrance.

There was no original inherent defect in the title of *Torrance.* It was free from all exception, and the mortgage gave notice of *Buchanan's* equities. The proceedings in equity by *Lorman,* were not against *Buchanan.* A purchaser may presume the court has investigated the title of parties, *Bennett vs. Hamill,* 2 *Sch. & Lef.,* 577, and there is no right to question a sale from a title not in issue, nor in any way affected by the decree, *Haines et al. vs. Beach,* 3 *J. C. R.,* 459. The court makes no warranty. It is only the title of parties which is sold. The purchaser only takes that. *Brown vs. Wallace & Mitchell,* 4 *G & J.,* 492. *Miss B.* was not affected by that sale, it only transferred the vendor's lien. The purchaser might be forced, by *Miss B.,* to transfer the title to her, A purchaser, with notice, is bound by the agreement, and must perform it. On the question of notice, he cited *Ghiselin and W. vs. Fergusson,* 4 *H. & J.,* 522. *Champion vs. Brown,* 6 *J. C. R.,* 398. *Graves vs. Graves,* 1 *A. K. Marshall,* 165. *Broadwell vs. King,* 3 *B. Munroe,* 451. *Wadsworth vs. Windell,* 5 *J. C. R.,* 224, 229. The mortgage to *Lorman,* in terms, gave notice of *E. S. B's* right. The advertisement of sale gave it; the deed of the trustee so conveyed.

On the fourth point he insisted, that the parties to the original purchase must be placed in *statue quo,* and on this point he cited *Bullock vs. Bemiss,* 1 *A K. Marsh.,* 433. *Brockenbrough and Taylor vs. Blythe's Ex'rs,* 3 *Leigh.,* 619. *Williams vs. Rogers,* 2 *Dana.,* 375. *Turner vs. Clay,* 3 *Bibb,* 53. *Bumpus vs. Platner,* 1 *J. C. R.,* 213. *Taylor vs. Lyon,* 2 *Dana,* 276.

On the fifth point he maintained, that the *Virginia* decree established the debt, and there was no ground to disturb that decree when it passed. *Story Confl. of Laws,* 278, 362. *Buchanan's* discharge under the insolvent law of *Maryland,* had no extra territorial effect. The obligee had a right to sell *Miss B's* bond, as much as any other part of his estate. It was not to be dormant in his hands, and unavailable, and hence proceedings to enforce it are not to be disturbed.

T. S. ALEXANDER, for the appellees.

The first point of the appellants is out of this case. Their third point relies on a mistake in the application of the fund arising from the sales of the *Warren Factory* under a decree, which is no ground of complaint against the decree itself. If they seek the application of that fund to themselves, they admit the validity of the decree. The law of the *second* point of the appellant is denied.

What is the justice of this case, the morality of this bill? *Torrance's* title is not questioned. He sold his interest, one-fifth of the factory, to *Miss B.*, on ten years credit, payable by instalments, and put her in possession. She relinquished to the purchaser under *Lorman's* decree in 1836. She paid nothing for use and occupation, nor for interest, and the factory now is valueless. Her representatives propose to sponge off the price and interest, and return the property in a dilapidated condition. If they had proposed to pay for use and occupation, there might be something in it. Then as to the pretext for setting aside the sale: they say, we cannot give them the thing we contracted to give them. Then, how stands the case. *Torrance*, a creditor for $60,000, with a lien on the property, makes a public sale, and discloses his contracts. All the mortgages disclose his right. He practices no injustice. *Lorman* sells his title, such as he had, no more, it is subject to *Miss Buchanan's* contract. The purchaser is affected with notice of all that appears in the record of the cause, in which the decree for a sale was obtained.

It is not true that the property was placed beyond *Miss B's* reach. She refuses to pay the purchase money; refuses to pay the assignee of her bond. *Lorman* seeks his right; he falls upon an unskilful attorney, who instead of proceeding by execution on the judgment at law, in *Baltimore* county court, files a bill, and the vendee improperly surrenders the possession, under a decree to which she was no party. This surrender is now wielded as a defence to her contract of purchase; is in fraud of it.

Then can the contract be rescinded? *Torrance's* title was originally good, a supervening defect is now relied on to defeat

it. Can *Miss B.* get a legal title? The vendor is a trustee for the vendee; a purchaser from vendor is a trustee with notice, and must execute the trust. *Lorman* might have sought a foreclosure, and cut off *Torrance.* But he takes a decree for a sale. He sells. Does the purchaser take any better title than *Lorman* had? Not at all. *Miss B* had a right to demand a title on payment. Then who is entitled to the balance of the purchase money. The delinquent purchaser should only be indemnified. The bill does not shew who is entitled to the purchase money. *Lorman* purchased a debt from *Dawson,* who bought the estate, and it would be a fraud on *Dawson* to claim the whole estate. The vendor may extinguish his lien, and still claim the purchase money     *Aymar vs. Bill,* 5 *John. C. R.,* 570.    *Turner vs. Clay,* 3 *Bibb,* 353.    4 *Dessau,* 126.

On the appellees fourth point: Upon what terms may the contract be rescinded? The parties must be reinstated; *Torrance* is entitled to his land: to something for dilapidation. It was a flourishing manufactory when sold. To put us back in 1845, will not repay us. The property should be restored to its original condition. It is like a covenant to repair or to rebuild    There must be compensation for seven years use of the estate. There was no actual fraud, and *Miss B.* must respond as tenant in possession. *Frisba vs. Hoffnagle,* 11 *John.,* 50.    *Mc Cay vs. Carrington,* 1 *McLean,* 61. *Garnett vs. Macon,* 6 *Call,* 368.

As to the *Virginia* decree, it is conclusive, it is in *rem.,* if no defence could be maintained to it in *Virginia,* none could be here.

By REVERDY JOHNSON, in reply:

On the former appeal, *Buchanan vs. Torrance,* 11 *G. & J.,* 342, only two objections were taken, and it was remanded to cure those defects. The equity of the case was not denied, and upon this appeal, the general principles involved since the defects of the first were cured, are not changed. *Torrance* consented to a decree for a sale, and *Dawson* bought clear of all the parties to the cause, and all persons claiming under them.

The purchaser took free of *Torrance's* title, took an absolute title, and then came the agreement to divide the proceeds, irrespective of these complainants. The court, in the former case, under the act of 1832, ch. 302, sect. 6, necessarily assumed, that the sale to *Miss B.* ought to be rescinded, or they would not have remanded the cause. That act required them to look at the justice of the case, and no relief could be granted, without determining that the sale should be rescinded. That is not now an open question.

The surety of the purchaser cannot be made to pay where there is a failure of consideration. The rule of equity cannot be denied as to an entire failure. *Garnett vs. Macon*, 6 *Call.*, 367, 368.

A vendor calling for specific performance, must be able to grant such an estate as he agreed to give. What is the cloud over the title here? We cannot demand title until 1839, nor he demand the principal of the purchase money. At the time stipulated for compliance, the vendor must be able to comply. How is this objection met? What will the purchaser, under *Torrance's* decree, say to us? I have bought out all his interest in the land. In 1835, he had the legal title, it was sold, and *Torrance*, could not comply with his bond to convey. Can this defendant answer us by saying, we may get the title from the purchaser, under the decree, or that possibly or probably, we may get it. Will *Torrance's* deed give a full title? Who is to decide that? Will the purchaser do it favorably to us? No. He will say he will not, and may rely on his decree. He may rely on the presumptions of the decree. This court cannot disturb his possession, without a bill. We might, perchance, recover it. Then is a vendee to pay for land, which he must go into equity against strangers, to compel a title to be given to him, after he has parted with his money? To relieve us from this difficulty, *Lorman* should have made these complainants parties, as *Torrance's* vendee, but that bill disregards us altogether. As respects *Torrance*, the property is gone, and that entitles us to satisfaction of the judgment at law.

Then, what does equity impose on us? It is said, account for rents and profits. It must appear, that the vendee has, or

might have received them.   Possession of the estate is not stated in the bill in answer.   Defects in answers are not cured by the act of 1832, ch. 302.   No averment in answer of receipts of profits.   If we are to account, how are we to account?   The vendee here, is not to account for interest, but if for any thing, only for what he has made.   This is a principle of justice.   It was a ruinous concern.   There can be no claim for interest where the debt is gone.   The cause cannot be remanded twice to make a better case.   There is no proof of dilapidation. Difference in price, is no proof of bad management.   The possession is gone, which is the fault of the vendor.

As to the proceedings in *Virginia,* we are entitled to have the judgment at law entered satisfied, and the sale rescinded. The defence was not disclosed to the *Virginia* court.   *E. S. Buchanan* not a party there.   Then as the party claiming the *Virginia* land resides in *Maryland,* his conscience may be affected here.   No jurisdiction over the land, but there is full, over his person.   Where a personal remedy may be decreed, or the subject matter is here, this court may act.   *Lorman* is in no better situation than *Torrance.*   If against equity to take *B's Maryland* lands, it is equally so to take his *Virginia* estate. Having lost the remedy in *Maryland* against the vendee, his sureties cannot be pursued in *Virginia.*

ARCHER, C. J., delivered the opinion of this court.

The complainants seek to vacate a sale made by *George Torrance* to *Eliza S. Buchanan,* of one undivided fifth part of the *Warren Factory,* on the 16th day of April 1829, on which day she executed her bond for the purchase money, and to enjoin the defendants from proceeding to collect the amount of the purchase money.   Suit having been instituted in *Baltimore* county court on this bond, judgment was confessed by the defendants on the 12th of December 1832, and proceedings having been instituted in the superior court for the county of *Ohio,* in the State of *Virginia,* as a court of equity, to subject certain funds and lands of the obligors in the bond to sale for the payment of the said judgment, and a decree having passed thereon, and certain portions of the property

having been sold, the bill further prays, that the defendants may be enjoined from further proceeding upon their decree in the superior court of chancery, for the county of *Ohio*, in the State of *Virginia*, that the sale reported in said cause of *James Buchanan's* land may be vacated, and the said *William* and *Alexander Lorman* enjoined from receiving a conveyance for said land, or in any manner alienating or disposing of the same; or that the said *William* and *Alexander Lorman* may be decreed to hold the same in trust for the heirs of *James A. Buchanan*, or his assigns, and for general relief.

It appears, from the bill, answer and exhibits, in the case, that after the contract of sale made by *Torrance* to *Eliza Buchanan*, that *Torrance*, on 13th of August 1830, mortgaged his interest in the property sold to *William Fulford*, to indemnify him as endorser for *Torrance* to the extent of $11,000, and on the 30th of November 1831, he mortgaged the same property to *William* and *Alexander Lorman*, to secure the payment of $7500. These mortgages, on their face, were declared to be subject to the operation and effect of, as well a bond executed by *Torrance* to *Eliza Buchanan*, on 20th April 1829, for the conveyance to her upon the terms therein expressed of the aforesaid one undivided fifth of the *Warren Factory*, as of a mortgage of said interest, in connexion with other property executed by *Torrance* to *Fulford*, on 13th of August 1830. On the 17th of May 1834, *William Fulford* and *George Torrance* executed an assignment of the mortgage of the 13th of August 1830, to *W.* and *A. Lorman*. On the 12th of May 1835, *W.* and *A. Lorman* filed their bill in *Baltimore* county court against *George Torrance* for a foreclosure and sale of the property thus mortgaged. To this bill *Eliza Buchanan* was not made a party, but the defendant, *Torrance*, voluntarily appeared, confessed the facts in the bill, and consented to a decree. On the 10th of October, *Baltimore* county court decreed a sale. On the 28th of January 1836, the trustee appointed to sell the mortgaged premises reported the sale to the court, and the same was, by the court, on the 26th of February 1836, finally ratified and confirmed. On the 1st of July 1836, *John Glenn*, the trustee, in pursuance of the decree

conveyed to the purchaser the one undivided fifth of the *Warren Factory*, thus sold to the purchaser.

Anterior to the above decree in *Baltimore* county court, *P. F. Dawson, F. Dawson*, and the *Warren Manufacturing Company*, alleging that *John T. Barr* had recovered a judgment against *George Torrance*, which was assigned to them, prayed to be, and were, by the court, made parties; and in their answer to the bill of *W.* and *F. Lorman*, allege, that the complainants have other securities for their debt, consent to a sale, and pray that the money may be brought into court to abide the decision of the court. The proceeds of sale amounting to $17,230, were distributed, $10,130, to *W.* and *A. Lorman;* to the *Warren Factory*, $6422.15, by an agreement between *W.* and *A. Lorman*, and *P. F. Dawson* and *F. Dawson*, filed on the 11th March 1836. By this agreement no more than $10,130 was to be applied to the payment of the mortgages exhibited in the cause; and it was agreed, that for the remaining balance due on said mortgages, *W.* and *A. Lorman* were to look to certain property of *James A. Buchanan*, in or near the town of *Wheeling*, which had been attached, &c.; and in consideration of $1000, *P. F.* and *F. Dawson* agree, that they will never interfere with *Buchanan's* property in *Viringia*, and *W.* and *A. Lorman* agree, that the balance of the proceeds of sale shall be paid to *P. F.* and *W. Dawson*.

Anterior to these proceedings in *Baltimore* county court, as a court of equity, to wit, on the 12th of December 1832, *Torrance*, for the use of *Fulford, W.* and *A. Lorman*, had obtained a judgment in *Baltimore* county court against the securities of *Eliza Buchanan*, who had survived her, for the purchase money. And, also, anterior to said proceedings in *Baltimore* county court, as a court of equity, *George Torrance, W.* and *A. Lorman*, and *W. Fulford* filed their bill in the superior court of law and equity for *Ohio* county, in the State of *Virginia*, against the securities of *Eliza Buchanan*, on her bond for the purchase money, alleging the execution of the bond, the judgment in *Baltimore* county court, that it was paid, and praying to subject the lands of *J. A. Buchanan* to sale, for

the payment of the said debt; and that funds in the hands of certain debtors of the said *J. A Buchanan* should also be condemned for the payment of the said judgment. On the 6th of November 1835, the superior court for the county of *Ohio* decreed, that *James A. Buchanan* should pay to the complainants in that proceeding, on a day named, the sum of $24,744, with legal interest until paid, and costs, the said sum being the amount then found to be due on the bond of *Eliza Buchanan*, that a certain tract of land in the bill mentioned should be sold to pay the amount decreed, unless within the time specified, the said amount should be paid, and that the debtors of *James A. Buchanan*, who had been made parties, should pay to the complainants the sums in their hands belonging to him, and that as to the residue of the lands mentioned in the proceedings, the bill should be retained for future decree; and as to the other defendants, the bill was dismissed. A sale under the decree was accordingly effected on the 30th day of July 1836, and the said *William* and *Alexander Lorman* became the purchasers. No further proceedings appear to have taken place in the *Virginia* court in the above case.

The complainants insist, that *Torrance*, by his acts, since the contract of purchase and sale, has disabled himself from complying with his contract, in making a title to his vendee, and that as by such acts the consideration upon which the bond has been given has failed, the contract of sale should be rescinded, and that the judgment obtained upon the bond given for the purchase money should be perpetually enjoined.

A vendee of an estate, in an unexecuted contract, is entitled to have that for which he contracts before he can be compelled to part with the consideration he agreed to pay. The ability of the vendor to convey should exist, when his duty, by the contract, arises to convey, or at the time of a decree for a conveyance, where time is not of the essence of the contract. And we conceive it to be equally clear, that a vendee is not bound to take an estate fettered with incumbrances, by which he may be subjected to litigation to procure his title. These principles are so obviously just, that they must be considered as resting at the foundation of every well regulated system of equity.

The admissions and facts in the cause show, that mortgages were, after the contract of sale, executed to secure to the mortgagees the payment of $18,500 ; that a bill was filed to sell the mortgaged premises to pay the mortgagees, and that a decree passed to sell the same, and the trustee was directed by the decree to convey to the purchaser the right of the mortgagor and mortgagees, which was executed by a sale in January 1836, and a deed accordingly executed to the purchaser in July 1836; in strict conformity with the terms of the decree.    To this decree the vendor voluntarily consented, and assented to part with his title    There can be no doubt but that this decree and sale operated to extinguish the vendor's title, and to pass it to the purchaser.   The argument which has been urged, that these mortgages and this decree only operated to pass so much of the purchase money due to *Torrance* as these mortgages called for, cannot be sustained, because, by the deeds themselves, the legal title passed to the mortgagees, and the mortgagees do not seek to subject to sale so much of the debt due to *Torrance* from *Eliza Buchanan* as would extinguish the mortgages, but they ask that the land mortgaged shall be sold to pay the amount of their lien, and the decree follows the prayer of the bill, and the assent given by the answer of *Torrance*, and directs the land to be sold, and all the rights of the complainant and defendant to be conveyed, upon a compliance with the terms of sale to the purchaser.

It thus appears, that when the contract of sale had ripened into maturity, *Torrance*, the vendor, by his own consent, as evinced by his acts, and by his answer to the bill in equity, had stripped himself of every vestige of title, legal or equitable, in the land he had sold, and was, himself, in consequence of these proceedings, in no condition to comply with his contract to convey, and had no legal capacity to enforce a re-conveyance of the title to him, so that he might comply with his contract.

It is true, that *Eliza Buchanan* was no party to these proceedings, and was, therefore, in no manner bound by them; and that she might, perhaps, have been competent, by applying as much of the purchase money as would have fully indemnified the purchaser, on the institution of proceedings in

chancery have coerced a conveyance upon the ground, that the mortgages were originally made subject to her contract of purchase, and that the purchaser under the decree in the county court took his title with notice of this condition and agreement. But although this may be so, it by no means relieves the case from the difficulties which surround it. For *Eliza Buchanan,* the vendee, was in no manner bound to take a title thus embarrassed, and to embark in a lawsuit against an adversary claimant, to obtain that, by delay, by perhaps expensive and protracted litigation, which, by the principles of law applicable to her contract, she had stipulated to have without delay, and without expense or litigation.

It has been argued that the complainants could, at all events, be only entitled to relief by averring a readiness to comply on the part of the vendee. If the vendee had gone into equity to compel a specific execution of the contract, she must have averred a compliance, on her part, with the terms of the contract, or to have offered to pay the purchase money. But this bill seeks a rescission of the contract, on the ground of a want of title, and a payment, or offer to pay, was unnecessary. To have paid the purchase money could not have strengthened the equity of the complainant. "Chancery requires no act to be done in vain: it therefore, could not require the payment of the purchase money in this case, or an offer to pay it after the defects in the title had become known," *McLean, R.* 86.

The case of *Hart and Blight,* 3 *Monroe,* 273, has been cited by the appellees as a case analogous to this. But it will be found, from an examination of that case, that the vendor, at the time when the conveyance was to have been made, was in a condition to comply with his contract, and had, for a year afterwards, his title unembarrassed. It was the fault of the vendee that he had not, by paying the purchase money, put himself in a condition to demand a specific execution of the contract; and having been in default in complying with his contract, but for which he could have had a conveyance, it was conceived that he was not entitled to enjoin the collection of the purchase money, and that he should be driven to his remedy against the vendor, or against the purchaser under the judgment.

But in the case before us, long before the stipulated time for the completion of the payments of the purchase money, and more than three years before the vendee could have called for the conveyance of the title, the vendor had parted with his title, and was utterly unable to comply with his contract to convey the land.

If we are correct in the above views, the consideration for the contract having wholly failed, *Torrance*, or his assignees, who stand in his stead, ought not to be allowed to recover the purchase money for the land sold, and as the judgment in the county court, sought to be stayed, was obtained on the bond for the purchase money, the defendants ought to be perpetually enjoined from instituting any proceedings to enforce its payment

The complainants conceiving that a perpetual injunction on the judgment obtained in *Baltimore* county court would furnish them with inadequate relief, if the defendants were permitted to reap the fruits of a decree, obtained against *James A. Buchanan*, seek further to enjoin them from proceeding to execute the decree obtained in November 1835, in the superior court of law and equity for *Ohio* county in the State of *Virginia*.

At the time of this decree, an equity existed on the part of the present complainants, to relief. The property sold was then encumbered with the mortgages to *Fulford* and *W.* and *A. Lorman;* the bill of the mortgagees had been filed in *Baltimore* county court, and a decree had been obtained to sell the mortgaged premises with the consent of *Torrance*, to satisfy these liens. Had these defences, which then all existed, been brought by way of defence to the notice of the court of equity in *Virginia*, we are bound to believe, that no decree would or could have passed against *James A. Buchanan*, until the estate sold should have been relieved from its embarrassments; and until the vendor, by so doing, could have shown himself in a condition to have passed the title to the vendee or her representatives.

That the court in *Virginia* possessed jurisdiction of the case decreed upon by them, has not been, and could not be denied. The decree must be considered as conclusive, as to the merits

upon the equities existing anterior to the decree, and as having all the efficacy of a domestic judgment or decree, and it could not there be examinable upon any ground of equity existing prior to the decree; and as it could not, upon such ground, be examinable in *Virginia*, we are legally incompetent to examine it here. But if an equity has arisen subsequent to the decree, which would make it inequitable in the defendants to enforce that decree upon such new and subsequent ground of equity, not existing at the time of the decree, the law, as we apprehend, would fully justify the complainants in demanding the interposition of this court, in restraining the defendants from enforcing the decree.

When the decree in *Virginia* was passed in Nov. 1835, the period had not arrived, when by the terms of the contract, *Torrance* was bound to convey the land sold to the vendee. He had until 1839 to fulfil his part of the contract; although he had created incumbrances on the estate, he might have removed them, and although a decree had in October 1835, passed in *Baltimore* county court for the sale of the land, which by contract he was to convey, it was in his power to have prevented the sale, by paying the costs of the chancery suit, in *Baltimore* county court, and the liens for which the land had been decreed to be sold. This, however, he did not do, but suffered the decree to be executed by the sale of the land in January 1836, which event occurred after the decree of the superior court of *Virginia*, by which event occurring after said decree, he had effectually placed it out of his power, either to convey, or to procure the title to the land he had contracted to convey.

Leaving out of view, therefore, all the acts of *Torrance* anterior to the date of the decree in *Virginia*, as upon this branch of the subject, not properly examinable, being foreclosed by the decree, the fact of the sale afterwards, by which he has disabled himself from complying with his contract, has created a new ground of equity in the complainants, which calls upon this court for the exercise of its restraining authority. This, however, can only be accomplished through the person of the defendant, who is within the jurisdiction of this court, and will not enable the court, as prayed by the complainants, to vacate

any of the proceedings which have taken place under the *Virginia* decree. The defendant ought, therefore, to be enjoined seeking to enforce his decree, from accepting a conveyance of the lands purchased under said decree, or if he has obtained a title, he ought to be decreed to reconvey the same to the heirs of *James A. Buchanan.*

From the views we have taken of this case, the contract of purchase must be rescinded; and it is insisted, that it should be upon the condition of paying to the vendor interest on the purchase money, and an equivalent in value for the deterioration of the property, during the continuance of the possession of the vendee.

For any deterioration of the property sold by the improvidence, or culpable negligence of the vendee, her representatives should be answerable, but not otherwise. 2 *Dana*, 375.

If the vendee were put in possession of the land, for all the time it was occupied by her, or her agents, she should be made to account for the rents and profits. It has been contended, that interest should be allowed for the use of the land, instead of rents and profits. The general rule may be, that when the purchaser is let into the possession and the perception of the rents and profits, he ought to pay interest on the purchase money; the buyer, being the owner of the land, must rest satisfied with the rents and profits, and the seller, the owner of the money, is entitled to interest. But as there is, generally, a great disproportion between the rents and profits, and the interest of the purchase money, there would be no propriety in applying the rule to a case where the sale was rescinded. In such a case, a court of equity could never treat the vendor as entitled to the purchase money, or consider the vendee as the owner of the land. These views will be found to be sanctioned by 3 *Leigh*, 647, 648; a different rule would seem to have prevailed in some of the States, 2 *Dana*, 375; but we cannot adopt the principle of that case, because we think it would operate injustice.

There is, however, no legal evidence in the case, going to shew the possession of the vendee, or its duration, or whether the deterioration of the property proceeded from casualty or

negligence, or the value of the rents and profits, and therefore again remand the cause to the court of Chancery, that evidence may be taken on these subjects, in order that justice may be effectuated between the parties.

CAUSE REMANDED.