## ADDISON E. MULLIKIN, C. HOWARD MILLIKIN AND HENRY H. DINNEEN *vs.* WILLIAM D. PLATT AND FREDERICK G. BLUM.

*Sales in equity; receiver's sales; exceptions; defective title.*

At a receiver's sale of the assets of an insolvent corporation, patent rights were the vital consideration for the purchaser's bid; the ratification of the sale was excepted to because the patent rights had already been sold and the title was in litigation. *Held,* that the exceptions should be sustained and the sale set aside. p. 486

*Decided April 5, 1911.*

Appeal from the Circuit Court of Baltimore City (NILES, J.).

The case was argued before BOYD, C. J., BRISCOE, PEARCE, PATTISON and URNER, JJ.

*Henry H. Dinneen* and *Arthur L. Jackson,* for the appellants.

*George P. Bagby,* for the appellees.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court of Baltimore City sustaining the exceptions of the appellees to the ratification of the sale to them of the assets, property, patents, franchises and rights owned or controlled by the Baltimore Skate Manufacturing Company, made by Addison E. Mullikin, receiver, and setting aside and annulling said sale.

The bill for the appointment of a receiver was filed September 2, 1909, alleging the insolvency of the defendant corporation, and on the same day, and without notice to the defendant, addison E. Mullikin was appointed receiver. From that order the defendant appealed, and on February 2nd, 1910, said order was reversed for the reasons stated in *Baltimore Skate Manufacturing Company* v. *Randall,* 112 Md. 411, and the cause was remanded. While that appeal was pending on the 27th of October, 1909, the receiver filed a petition in the case showing that he had received from the appellees in this case an offer to purchase the assets, patent rights, franchises, and all property of the defendant, which will hereafter be designated as the Skate Company, for the sum of $25,000, of which $2,500 was to be deposited upon acceptance of the offer, and the balance to be paid in cash upon ratification of the sale and the conveyance of the property with a good and sufficient title thereto, and it was stipulated in said offer, that upon its acceptance, the receiver should operate the plant of the Skate Company, under the direction of the Court, so that all orders might be filled from time to time as received, but that no part of the $2,500 above mentioned should be used in the operation of the business. It was also provided that the operation of the plant by the receiver should be at the risk and for the account of the appellees, and that any additions to the funds or property as a result of such operation should be paid over to the appellees upon the final ratification of the sale, and that if it should not be ratified, said $2,500 should be returned to the appellees. The receiver filed with his said petition, a paper signed by the majority in number and amount of the creditors of the Skate Company asking the Court to authorize the acceptance of the offer of the appellees, and he declared his belief that the offer was the best that could be obtained, and recommended its acceptance unless the stockholders of the company or some responsible person should make an immediate and better offer with equal cash deposit.

The receiver in said petition also informed the Court that W. Stuart Symington had conducted negotiations for the sale of the Skate Company to persons in London and Glasgow, and that Symington held notes payable to himself, and unsecured, and not due till December 30th, 1909, but that the receiver did not believe these negotiations would warrant delaying the acceptance of the offer he reported, and that if this offer were not accepted, and the negotiations mentioned, failed, that the assets of the company would not exceed $5,000 .

The Court authorized the acceptance of the offer of the appellees, subject to an order *nisi* and the usual exceptions, on October 27th, 1909, and required a copy of said petition and order to be served on the president of the Skate Company by October 29th, 1909. The Skate Company answered this petition under oath November 4th, 1909, alleging that as an appeal had been taken by it for the order appointing a receiver, the Court had no jurisdiction to proceed further pending said appeal; also setting up the negotiations of Symington, acting under a power of attorney from the company, for the sale to the foreign parties, and alleging that Symington, acting under said power, had on October 22nd, 1909, assigned the patent of said company to the British American Skate Manufacturing Company, Ltd., of London, England, by a writing duly recorded in the Patent Office at Washington, and had sold to said foreign company all of the issued shares of the Skate Company; and also alleging the belief that the notes held by Symington would be paid when due, and that in that event, the pending arrangement would pay all creditors of the Skate Company in full, and also pay the preferred stockholders in full; whereas the offer made to the receiver, being conditioned upon the transfer of the Skate Company's patent, which was alleged to be impossible of fulfilment, because of the previous assignment, would not pay the creditors in full. With this answer exhibits were filed showing the power of attorney under which Symington was acting and the agreement made with the British American

Company. This answer was signed as solicitor by Mr. Din-
neen, one of the present receivers, and was supported by
an affidavit. On November 5th, 1909, the receiver reported
to the Court that no better offer had been received than that
of the appellees, and alleged there was nothing in the answer
of the Skate Company which should prevent the ratification
of the sale and prayed for the usual order *nisi,* which was
granted, fixing December 24th, 1909, as the date for show-
ing cause against the ratification of the sale.

On December 22nd, 1909, the appellees excepted to the
ratification of the sale, alleging that as the patent rights of
the Skate Company had been assigned to the British Ameri-
can Company, or purported to be assigned, the receiver could
not, nor could the Court, at the present time deliver to the
appellees said patent rights included in their offer of pur-
chase.

In the meantime, on December 13th, 1909, the Circuit
Court passed an order reciting the reversal of the order
appointing Addison E. Mullikin receiver, and remanding the
the cause, and by said order of December 13th, 1909,
appointed Addison E. Mullikin, Henry H. Dinneen and C.
Howard Mullikin, receivers *pendente lite,* upon condition,
however, that if Symington, on or before January 15th, 1910,
should realize from said notes sufficient to pay the creditors
in full, then upon such payment in full, or the deposit of
sufficient funds in some bank in Baltimore City to cover
any disputed claim against the defendant, then the order
appointing receivers *pendente lite* should be revoked and
annulled so that Symington's arrangement could be carried
into effect, and in the meantime the receivers were authorized
to operate the concern subject to the order of the Court, and
their previous operation of it under oral instructions from
the Court was approved.

On February 25th, upon the petition of the receivers
*pendente lite,* they were made permanent receivers, and the
officers of the Skate Company were directed to execute and
deliver unto said receivers an assignment of all the right,

title and interest of said company in and to its application for letters patent of the United States dated May 16th, 1908, and designated as Serial No. 433,270.

On March 5th, 1910, said receivers reported that this assignment had been made, but that by reason of Symington's previous assignment to the British company, the receivers' title thereto was not entirely clear, and they prayed leave of the Court to institute an action in the Supreme Court of the District of Columbia for the purpose of removing the cloud thus resting on their title to said patent which in their previous petition they had alleged to be among the most valuable properties of the defendant, and an order was accordingly passed the same day authorizing and directing the prosecution of such an action.

On June 14th the appellees filed supplementary exceptions to said sale alleging among other things that when their offer of purchase was made it was with the understanding that they would be put in possession of all the property and assets at the expiration of the order *nisi,* which was on December 24th, 1909, whereas six months had then elapsed, and the value of the property and business had so greatly depreciated during said delay, that even if their previous objections were removed they could not now get what they had offered to buy.

On August 26th, 1910, the appellees filed additional exceptions, alleging, among other things, that the effect of the decree of this Court of December 9th, 1909, reversing the order by which Addison E. Mullikin was appointed receiver, was to render the sale null and void; also that as the order of December 13th, 1909, appointing receivers *pendente lite* was made upon the express condition that if said Symington's negotiations were successful said Symington was to convey and deliver all the property of the defendant to the British Company *without any further order of the Court,* it was a recognition by the Court and by said receivers of the invalidity of said sale and of their want of power and authority to assert or enforce the same.

It is admitted that in pursuance of the direction of the Court, a bill was filed in the Supreme Court of the District of Columbia by said receivers against the Baltimore Skate Company and the British-American Skate Company for the purpose of having the assignment of said patent to the British-American Skate Company declared null and void, and to require said British-American Company to execute and deliver to the receivers an assignment of said patent in due form of law, or in event of its refusal to make such assignment, that the same should be made by a trustee to be appointed for that purpose; and it is admitted that the British-American Company, appearing specially for that purpose, demurred to said bill for want of jurisdiction in the Court to entertain the bill, and that upon the hearing of the demurrer the bill was dismissed. A copy of the bill and of the demurrer thereto was put in evidence and is embraced in the record, and it appears that it was sworn to by Mr. Dinneen, one of the receivers.

It will be well to notice here some of the averments of this bill. It stated that "the most valuable asset owned by said company at the time of the appointment of said receiver was a certain application for letters patent of the United States covering improvements in roller skates;" * * * "that the offer of Platt and Blum was conditioned upon their getting title to the Baltimore Company's patent;" * * * "and that payment of the balance due on said offer may be enforced by the complainants as soon as the title to the Baltimore Company's patent shall have been judicially decided to be in said Baltimore Company's receivers." Nothing further has been done since the dismissal of that bill towards the accomplishment of the end it sought and there is no suggestion that any further effort is in contemplation. The cloud which the bill alleged rested upon the title of the receivers to that patent, instead of being removed, has grown darker and more ominous. If, as alleged by the answer of the Baltimore Company to the petition of the original receiver for leave to accept the appellees' offer, the condition that the transfer of

the patent was then "impossible of fulfillment", it is still impossible; but even if not impossible, it has been demonstrated that it can not be accomplished without costly litigation of doubtful result. To ratify this sale in these circumstances would be to transfer to the appellees the litigation in which the receivers have failed, and to force upon them the shadow, without the substance of that for which they contracted.

A considerable amount of testimony was taken, but none of it affects the above recited undisputed facts, and it would be useless to refer to the testimony, further than to say that it shows all parties understood throughout the whole history of the case that the transfer and control of the patent was the vital consideration for the offer of purchase, and that it discloses no act or conduct on the part of the appellees which should deprive them of their right to insist upon the condition of their contract or would warrant the Court in inflicting upon them such hardship and injustice as would result from the ratification of this sale.

Without deciding or intimating that this case is within the doctrine of *lis pendens,* but assuming for the moment that it could be so held, the argument of the appellant based upon that proposition might be conceded to be available to him in a suit against the British-American Company to have the assignment declared void, but that is the question for litigation by the receivers in order to enable them to deliver what they have agreed to deliver, and that litigation can not be shifted from them to the appellees. No Maryland case at least can be found to sustain that position.

The same principles which are applicable where the subject-matter of the case is real estate are applicable to a contract of this character, and the cases establishing these principles are too familiar to require their enumeration; but the language of JUDGE LEGRAND in *Dorsey v. Hobbs,* 10 Md. 417, states the law so concisely and satisfactorily that we reproduce it here.

He said: "In regard to such a case as this, it appears to us there ought to be no doubt in the mind of anyone as to what should be the decision on obvious principles of equity and common sense. It presents simply this question:— Whether a person may sell a thing to which he has no title, and recover the purchase money without transferring the title to the thing sold? It would seem that the bare stating of the question is to resolve it in the negative. * * * The contract is an unexecuted one. In speaking of such a one, the Court, in *Buchanan et al* v. *Lorman et al.,* 3 Gill, 77, held the following language, which is conclusive of this case: 'A vendee of an estate, in an unexecuted contract, is entitled to have that for which he contracts before he can be compelled to part with the consideration he agreed to pay. The ability of the vendor to convey should exist, when his duty, by the contract, arises to convey, or at the time of a decree for a conveyance, where time is not of the essence of the contract. And we conceive it to be equally clear, that a vendee is not bound to take an estate fettered with incumbrances, by which he may be subjected to litigation to procure his title. These principles are so obviously just, that they must be considered as resting at the foundation of every well-regulated system of equity."

In this view of the case, there is no occasion to consider any other questions presented at the argument or in the briefs, and for the reason above given the order appealed from must be affirmed.

*Order affirmed, with costs to the appellees.*